IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

- - - - - - - - - - - - - - -X
NGONG KAW GARANG,                    :
                                     :
            Plaintiff,               :    Case No. 4:18-cv-00270
                                     :
      vs.                            :
                                     :
CITY OF AMES, A. HOCHBERGER, :    TRANSCRIPT OF PHONE HEARING
T. FISCHER, B. MCPHERSON,    :    (Motion for Summary Judgment)
J. CONGDON, JENNIFER YETMAR, :
and COLE HIPPIN,                     :
                                     :
            Defendants.              :
- - - - - - - - - - - - - - -X


                              United States Courthouse, Room 197
                              123 East Walnut Street
                              Des Moines, Iowa  50309
                              Thursday, September 26, 2019
                              10:30 a.m.


BEFORE:  THE HONORABLE CHARLES R. WOLLE, Senior Judge.
         (Via telephone )

APPEARANCES:

For the Plaintiff:              ROBERT B. GARVER, ESQ.
(Via telephone)                 475 South 50th Street, Suite 200
                                West Des Moines, Iowa  5-275


For the Defendant:              MICHAEL C. RICHARDS, ESQ.
(Via telephone)                 Davis Brown Law Firm
                                215 Tenth Street, Suite 1300
                                Des Moines, Iowa  50309




                  Terri L. Martin, CSR, RPR, CRR
                  United States Court Reporter
                  Room 197, U.S. Courthouse
                  123 East Walnut Street
                  Des Moines, Iowa  50309

1              P R O C E E D I N G S

2              (Court and counsel via telephone conference call.)

3              THE COURT:  Good morning.

4              This is the conference on defendant's motion for

5    summary judgment.  First I'll give Michael Richards ten to

6    fifteen minutes to argue in support of summary judgment and

7    Robert Garver a response and give Mr. Richards a brief reply.

8              We have Terri Martin on the phone as the reporter.

9              Mr. Richards, support your claim for summary judgment.

10             MR. RICHARDS:  Thank you, Your Honor.

11             Judge, to begin there are two motions for summary

12   judgment that we're arguing today.  I'm primarily going to focus

13   on the first motion for summary judgment which covers all of the

14   defendants, and I believe the court won't have to get to the

15   second motion for summary judgment because that only relates to

16   three individual defendants.  So I'm going to start with and

17   focus primarily on the primary motion for summary judgment.

18             THE COURT:  Okay.

19             MR. RICHARDS:  I'm sure you're well aware of the

20   facts, Judge, but just to highlight some of the important ones,

21   on October 15, 2017, the Ames Police Department was dispatched

22   to respond to the Foundry Apartments in Ames with a complaint

23   that an individual named Wyatt Graves had been assaulted in his

24   room.  Dispatch advised the officers that he was assaulted by

25   two to three black males and potentially two black females.

1           Four officers initially arrived, and as they were

2    walking into the building, dispatch advised that there was an

3    individual named Gony Bijiek who was involved or potentially

4    involved in the assault.  One of the four officers knew Gony

5    Bijiek from prior interactions.  And when they entered into the

6    lobby, they saw Gony Bijiek with another individual.  So they

7    immediately detained those two individuals and started

8    questioning them about potential involvement in this assault.

9           During the course of this detention, two of the

10   officers went upstairs, got Wyatt Graves, the individual who was

11   assaulted, brought him back down.  Wyatt Graves, we've

12   determined, identified both of those people as being involved.

13   He went back up to his room.  As they were questioning these two

14   people and before they placed them -- before they put handcuffs

15   on them, a third individual named Mr. Garang starts -- he

16   started looking very interested in the conversation, popping his

17   head out the door, trying to get Gony Bijiek's attention, to the

18   point where Officer McPherson, based on her education, training,

19   and experience, thought something looked suspicious.

20          So Officer McPherson went over to Mr. Garang and began

21   questioning him.  Mr. Garang, the plaintiff, gave a false name.

22   He said his name was John Garang.  So dispatch was not able to

23   come back with anything.  Ultimately, he said, Well, okay,

24   here's my real name; it's Ngong Garang.  And then he came back

25   as someone in the system.

1          In the meantime, Your Honor, a fifth police officer

2 arrives, a sergeant, Sergeant Congdon, and Sergeant Congdon goes

3 upstairs, talks to Wyatt Graves again.  He asks Wyatt Graves

4 what he wants to do.  Wyatt Graves says, I want to press

5 charges.  He brings Wyatt Graves back down to the lobby.  Wyatt

6 Graves then says to Officer Congdon, All three of those guys

7 were involved in the assault and battery.  He identifies all

8 three.  We have an affidavit from Officer Congdon that says that

9 and his deposition and deposition testimony from two of the

10 other four officers that were next to them that say -- that

11 confirm that Graves did, in fact, say that.  All three were

12 placed under arrest and taken to Story -- or taken to Ames.

13          Ultimately, the next day they were brought to Story

14 County Jail, and they were put into the custody of Story County

15 Jail and the Story County prosecutor initiated charges against

16 them for burglary.

17          Mr. Garang stayed in jail, Judge, for the next -- a

18 long period of time.  He wasn't able to bail out, so he stayed

19 under the custody of Story County.  During that time period,

20 though, the Ames Police Department continued to investigate the

21 situation.  And ultimately, Judge, we learned that the

22 plaintiff, Mr. Garang, wasn't, in fact, one of the people that

23 assaulted Mr. Graves.  The three people who were arrested,

24 Bijiek, Garang, and the third person -- the third person

25 actually was one of the three people that assaulted Graves, and

1   the other two people were convicted on a later date, and it

2   turns out they were staying with Mr. Garang at his apartment,

3   and Mr. Garang admitted at his deposition that they had been

4   going to parties and drinking and smoking marijuana that day.

5          So the long story short, Judge, is ultimately it was

6   proven that Garang did not assault Graves; but that's not what

7   the officers knew at the time when they arrested Mr. Garang.

8          So we have sort of a three-part motion for summary

9   judgment.

10         The primary argument, Judge, I think is that there was

11  probable cause to arrest.  We have an eyewitness, not only

12  eyewitness, the victim himself, who identifies Mr. Garang as one

13  of the three people that assaulted him.  And as Your Honor

14  knows, you know, the Eighth Circuit, for example, in Fischer

15  versus WalMart Stores, which is in our brief, 619 F3.d 811,

16  officers are entitled to rely on the veracity of information

17  supplied by the victim of a crime.

18         Another case we cited is from the Seventh Circuit,

19  which is Jenkins versus Keating.  So long as a reasonably

20  credible witness or victim informs the police that a crime has

21  been committed, the officers have probable cause to place a

22  culprit under arrest and their actions will be cloaked with

23  qualified immunity if the arrestee is later found to be

24  innocent.

25         So, Judge, first of all, we think that there's

1    probable cause for the arrest.  So we think the whole case

2    fails.  Even if there wasn't probable cause for the arrest, that

3    takes us to the next defense, Judge, which is the qualified

4    immunity.  And as the court is well aware, qualified immunity is

5    a broad shield for state actors, and it applies regardless of

6    whether an official makes an error, which is a mistake in law or

7    fact or a mistake based on mixed questions of law and fact.

8           And as the U.S. Supreme Court said in Hunter versus

9    Bryant, which is in our brief, qualified immunity protects

10   officials unless they are plainly incompetent or knowingly

11   violate the law.  And there's just no evidence, Judge, that's

12   been supported to show that.

13          And I think really an illustrative case, Judge, is

14   Walker versus City of Pine Bluff case, which is an Eighth

15   Circuit case, and they say specifically that a warrantless

16   arrest is consistent with the Fourth Amendment if it's supported

17   by probable cause, and an officer is entitled to qualified

18   immunity if there's at least arguable probable cause.

19          So if there was probable cause, there's no

20   constitutional violation.  If there wasn't probable cause, as

21   long as there's arguable probable cause, there's no Section 1983

22   claim under qualified immunity.

23          And as I said in the brief, Judge, if eyewitness

24   testimony from the victim himself isn't enough to satisfy

25   probable cause, I just don't know what would be enough.

1        Mr. Garang's argument in response is, well, he was

2   drunk or, well, you learned all of this other information after

3   he was arrested that shows that a reasonable person should have

4   done more investigation; but that's not how the law works.

5   Anything that occurs after the arrest during the investigation

6   can be ignored with respect to whether there was probable cause

7   at the time of the arrest or qualified immunity at the time of

8   the arrest.

9        And an interesting case out of the Seventh Circuit,

10  which has been cited by -- with approval by the Eighth Circuit,

11  in the Clayborn versus Struebing case, which is 734 F.3d 807, it

12  says, Once probable cause is developed, officers have no

13  constitutional obligation to conduct further investigation in

14  the hopes of uncovering potentially exculpatory evidence.

15       So once they have sufficient probable cause or

16  arguable probable cause, that's where the determination ends.

17       There's kind of a second component of the plaintiff's

18  claims in this which need to be addressed, and that is the

19  plaintiff has also claimed that, okay, well, even if he had

20  probable cause for the arrest, there's a separate -- you

21  shouldn't have been able to keep him in custody afterwards when

22  you started to learn this information after his arrest that he

23  wasn't in the room at the time of the assault.

24       And the problem with that argument, Judge, is he was

25  no longer in the City of Ames' custody.  He was charged by the

1  county attorney of Story County, and he was in the Story County

2  Jail.  And we've cited the Iowa Rule of Criminal Procedure in

3  our brief, Judge, which is Rule 2.33(1), and it talks about the

4  dismissal of criminal actions, and it says, "The court, upon its

5  own motion or the application of the prosecuting attorney, in

6  the furtherance of justice, may order the dismissal of any

7  pending criminal prosecution, the reasons therefor being stated

8  in the order and entered of record, and no such prosecution

9  shall be discontinued or abandoned in any other manner."

10       So -- and that makes sense.  You know, once the

11  county -- once this individual is in the county system and he's

12  in the county's jail, the City of Ames Police Department can't

13  say release him.  They don't have the authority to do that.

14  They can't do that.

15       We submitted with the motion for summary judgment an

16  affidavit from the county prosecutor that sets forth the

17  continued investigation that they did with the City of Ames, and

18  it sets forth that he made the decision to continue and that the

19  City of Ames does not have the authority to tell the county to

20  release somebody from their custody.

21       So the argument that we're somehow liable under

22  Section 1983 for a Fourth Amendment violation for the fact that

23  the county kept him in jail until the county was satisfied that

24  he wasn't involved and they were willing to dismiss the charges,

25  it fails as a matter of law because it's not something the city

1    could be responsible for.

2         The plaintiff also made a due process argument.  The

3    Supreme Court has determined in Albright versus Oliver that

4    there is no due process violation for a substitute -- there's no

5    substantive due process claim to support a 1983 civil rights

6    action for lack of probable cause on an arrest in Albright

7    versus Oliver.  So the due process claims have to be dismissed

8    as a matter of law as well, Judge.

9         THE COURT:  I have one question.  I have a question

10   whether you've seen the flash drive that was filed on

11   September 13th by the plaintiff's counsel?

12        MR. RICHARDS:  Judge, plaintiff's counsel has provided

13   me with a copy of everything, yes, sir, that he filed

14   afterwards.  Yes, sir.

15        THE COURT:  Okay.  I'll give you a reply after we hear

16   from Mr. Garver.

17        Response to the motion, argument.

18        MR. GARVER:  Judge, this case is factually based like

19   I think most, if not all, of these types of cases are, and we

20   would argue that it is, in fact, two parts, like Mr. Richards

21   and I have discussed from the beginning, whether or not the

22   initial arrest was proper and then whether or not the continued

23   detention of Mr. Garang was proper.

24        And with respect to the arrest, I do not think that

25   there is sufficient solid indisputable evidence that probable

1   cause existed to take Mr. Garang down to the station on that

2   evening for a variety of reasons.  He happened to be in the

3   lobby where he resides, and as stated in his affidavit and other

4   places, he was having a birthday party that night and there were

5   other parties going on.  So it was a pretty typical Saturday

6   night in a college dormitory or college apartment with kids

7   going in and out, back and forth, up and down, different

8   parties, really nothing unusual at all.  And, in fact, the

9   property manager, Summer Feaker, said that in her deposition,

10  said it didn't look like there was anything unusual going on.

11          So he was in the lobby, and really the reason that he

12  was in the lobby is not all that important as far as deciding

13  what the cops knew or didn't know at the moment they decided

14  that he's a suspect and then go further and arrest him some 20,

15  25 minutes later.  In fact, he was down there because these

16  doors lock to the outside, and unless you have a key because you

17  live there, you have to push the door from the inside to let

18  somebody in.  He was expecting a young lady to come over for his

19  birthday party, and that was one of the reasons, not the reason

20  that he was down there.  He sees this Gony gentleman who's

21  outside with these two black females, and he goes over because

22  Gony doesn't live there, but he's a friend of Garang.  He pushes

23  the door open and lets the three of them come through.  So it

24  was that simple.  It was that innocent.  And then the police

25  come in and follow Gony and start to question him.

1          So Gony is a black man, a young black gentleman, and

2   was wearing all white, shorts, shirt, everything.  In the video

3   you can see that was the case.  And he was questioned for some

4   time.  Then at some point in time -- and I think the timing is a

5   little different than what Mr. Richards has indicated because

6   there wasn't two people being questioned; there was just Gony

7   being questioned, the gentleman in white.  And then at some

8   point in time when Garang continued to be present or looking out

9   the door, actually looking for this female that he was going to

10  let in to come up to his party, Officer McPherson decided that

11  she might just go over and ask him some questions.  So that's

12  fine, she did that.  She had some information that there were

13  two, maybe three black people involved.

14          What's important I think to the factual content of

15  whether there's probable cause or not is the fact that two of

16  the four officers that arrived there early on, a Hochberger and

17  a Yetmar, they came in, they went up to the apartment of the

18  victim on the fourth floor and spoke with him for some time.

19  They learned at that time that he had been struck with a bottle

20  to the back of his head and knocked down and was being kicked in

21  his face.  And during this time while he's being kicked in his

22  face, he looks up, to the extent that he can, and he's able to

23  determine that there's two black people, one is wearing white,

24  one is wearing red or has some red on.  That's the information

25  they had.  That's really what they knew about the potential

1  suspects.

2           So they go back to the lobby, and then the victim,

3  this Wyatt Graves, comes down a few minutes later.  And that's

4  all in my resistance, as well as in the video.  And you'll see

5  that Graves walks into the lobby, and he sees the person in

6  white, which a black person in white -- unfortunately, that

7  night Gony Bijiek was wearing white, and he's a black man, and

8  I'm quite certain that's why the victim pointed to him.  And he

9  ended up being arrested and eventually released because he

10 didn't have anything to do with it.  And then the guy in red who

11 was sitting there, who was a bad actor, he's also identified by

12 his victim.

13          Now, at this time, John Garang is over by the door,

14 and he's not identified.  And you can look at the video a

15 hundred times, you're not going to see this victim point over

16 there or at any time indicate that the guy over by the door

17 that's being questioned by McPherson has been identified by him

18 as one of the attackers.

19          He then leaves, goes back up to his apartment, and

20 things kind of stay kind of status quo until the sergeant

21 arrives.  Sergeant Congdon arrives and spends a very short time

22 with Ashley Hochberger, one of the officers there, and no one

23 remembers exactly what was told to him; but what should have

24 been told to him was the fact that the victim has identified two

25 black people, one with white and one with red, and came

1   downstairs and pointed them out and that was it.  But apparently

2   that wasn't what was told to him.  So he goes upstairs and gets

3   the victim, brings him back down for a second time.

4              So that's not argued in the motion for summary

5   judgment as a fact, as a material fact; but, in my mind, it's a

6   very material fact that the victim was down and did not identify

7   Garang when he had an opportunity.

8              So then we know that the victim is brought down to the

9   lobby but not into the lobby.  He's over somewhere by the

10  elevators.  And then we're told that he's not brought any closer

11  to Garang or Garang is not brought any closer to him because of

12  some fear that these other two individuals are causing trouble

13  or threatening, and the video clearly shows that's just not the

14  case.  There wasn't anything like that going on whatsoever.

15  There was no reason at all that Garang could not have been

16  brought over to the victim or the victim brought over to Garang

17  to actually make an identification.

18             What we do know -- and Congdon admits it -- is that

19  the victim was intoxicated.  What we also know is the victim had

20  been beaten and had a right eye that was swelling closed from

21  the beating that he had and the kicking and everything else.

22             So this is not really one of these reasonably credible

23  witnesses that Mr. Richards has referred to in the case that he

24  cited.  And I think that it certainly opens the door for

25  discussion and a jury could find that that just wasn't enough to

1   satisfy the requirements of probable cause, especially under

2   these circumstances.

3          What else did they do?  They said, Well, he had a

4   bloody gray polo on, and that was part of the reason that we

5   arrested him.  And when pressed, McPherson, who was standing

6   next to him for ten, fifteen minutes, admits that she could not

7   see blood on him.  She didn't see blood on this shirt.  But it's

8   described as a bloody gray polo repeatedly.  Of course, it's

9   sent to the lab, it comes back, there's no blood on it, all

10  right.

11         Also part of the reason for the totality of

12  circumstances giving rise to the initial arrest was that Garang

13  was carrying property, and the county attorney himself said,

14  yeah, he understood that Garang was carrying property that he

15  suspected or assumed was stolen property and that's why it was

16  talked about.  Well, that's just not true.  Garang didn't have

17  anything at all.  There's not a suitcase.  There's not an Xbox.

18  There's not anything whatsoever anywhere near Garang, period.

19         So he's not bloodied up, he's not carrying stolen

20  property, he lives there at the place which he tried to explain

21  to the officer, and then he's hauled off based upon an

22  identification supposedly made by a victim who's been beat with

23  a bloody face and later says, I don't remember identifying a

24  third person at all.

25         And I would suggest to you that that's because he

1  didn't.  I mean, they spent -- and here's the other part of it.

2  When Garang is brought down by Congdon, the sergeant, the

3  sergeant says -- he's brought down, and then it was a very

4  short, very quick procedure.  He came down, he looked over, and

5  he said, Those are the three guys.  I asked him that repeatedly,

6  and another officer said, Yeah, it happened quick.  It didn't

7  happen quick.  The video shows that it was a back and forth

8  thing.  It was back and forth.  Hochberger was over there

9  talking to him over and over.  She leaves.  Congdon is talking

10 to him.  He leaves.  He comes back, talks some more.  Of course,

11 you can't see him because he's over by the elevator.  He's

12 outside of the view of the camera.  But then eventually at

13 1:30 -- and now it's been something on the order of ten

14 minutes -- then the sergeant comes out and says -- and Garang

15 remembers this -- Arrest all three of them.

16        I'm not thinking that that was a solid identification,

17 and I certainly think it's one that a jury should be able to

18 look at and decide whether or not this is a reasonably credible

19 witness because I don't think he knew what happened, and I think

20 they wanted the three black guys in the lobby to be the three

21 black guys that they think were responsible; but as it turns

22 out, of course, two of the three were not.

23        So issue two was whether or not they could keep him as

24 long as they kept him, and I think that the law states that the

25 arrest and detention are one and the same and you can't

1  delegate, you can't say, Well, it's no longer our problem.

2  Because once we arrest them, it's somebody else's problem, not

3  ours.  It's not our decision.  And the case on that states when

4  that argument was made -- and I'll have to find this case for

5  you, Judge; but the argument is in my brief, they said, You

6  don't have any authority for this.  You've offered no authority

7  at all, and there wouldn't be any cases ever if that was, in

8  fact, the way it worked, that once the police arrest you,

9  they're just finished, there's no longer any responsibility on

10  their part.

11         Now, I think that might be a factual thing if the cops

12  went in and said, Look, we found out that he wasn't in the

13  apartment, that you should probably release him.  We don't have

14  any evidence on him.  But just the opposite happened because the

15  detective says, We think he's involved in some degree.  We think

16  somehow, because we saw him with the other -- with the people

17  that did the assaulting, that he's involved.  So they're arguing

18  guilt by association.  And really on that standard there should

19  have been 20 or 30 kids in jail because they were all in the

20  parties, out of the parties, in the hallways, back and forth, up

21  and down the stairwell.  It was just a normal Saturday night.

22  That's all they have to keep John Garang.  That's all they have,

23  that's all they have.

24         THE COURT:  And what does the flash drive prove in

25  support of your resistance?

1          MR. GARVER:  The flash drive, in terms of the

2   hallways, Judge, shows that all there was was John Garang with a

3   group of people, some of whom later were determined to be the

4   bad actors, in and out of a party, not just by themselves, but

5   with other people that were as innocent as John Garang.  And so

6   that's it.  I mean, that's the entire video evidence that was

7   relied on by the detective and used to continue to hold John

8   Garang while they got a search warrant and searched his

9   apartment, found nothing, and eventually then let him go because

10  they thought he was one of them.  They tried to find the

11  evidence, but they couldn't find the evidence, so they let him

12  go.  And it's not supposed to work that way.  They're supposed

13  to have something on him -- sure, try to build your case

14  stronger, but you have to have something to begin with, and they

15  had nothing, nothing at all, and that's what that shows in the

16  hallway.

17          And as far as the lobby goes, that deals with part one

18  of the argument showing that there really wasn't strong evidence

19  at all or reasonable evidence to rely upon that an arrest should

20  have been made in the first place.

21          THE COURT:  I understand.  Well argued.

22          And now a reply argument, Mr. Richards.

23          MR. RICHARDS:  Yes, Your Honor, very brief.

24          Judge, I would suggest that the argument that the

25  plaintiff is making in this case really is a lot of Monday

1 morning quarterbacking because he's referring to information

2 that was all discovered after the arrest.  The officers don't

3 have the benefit of having the ability to review four hours of

4 videotape before we make an arrest.  They don't even have the

5 videotape.  They don't have that benefit of conducting five or

6 six interviews of other people who are not at the location.

7 That's not -- they don't have that opportunity.  Officers never

8 have that opportunity.

9          That's why qualified immunity protects you, even if

10 there's a mistake in fact or a mistake in law.  And the Supreme

11 Court is very clear that a 1983 claim does not arise just by the

12 fact that someone didn't do something and is ultimately proven

13 to be innocent.  That doesn't change the analysis.  The

14 Constitution doesn't guarantee that only the guilty will be

15 arrested.  And that's in the Olinger versus Larson case.  I

16 guess that was an Eighth Circuit court case, Judge.

17          With respect to the bloody polo issue, I've never

18 understood that, and I don't understand it now because none of

19 the officers have said that they arrested him because he had a

20 bloody polo on that evening.  The polo wasn't determined

21 potentially to have blood on it until several days after the

22 arrest when they were continuing to try and develop and

23 investigate the case so they could figure out who was right and

24 who was wrong.

25          In regards to the allegation that Graves wasn't a

1   reasonable or reliable witness, there's a big problem with that,

2   and that is he actually identified one of the three people who

3   did, in fact, assault him and commit a burglary upon him.  The

4   two other people were ultimately convicted because he did

5   positively and correctly identify one of the individuals on the

6   night of the accident, the same night that he improperly -- or

7   incorrectly, I should say, identified Mr. Garang.

8          So just by the fact that he's either intoxicated or

9   has an injury doesn't mean he's not able to make a positive

10  identification on someone or that the police should somehow be

11  clairvoyant to determine whether or not he's right or wrong.  In

12  effect, he was right with respect to one of the three people.

13         And also, Judge, to suggest that Mr. Garang was just

14  an innocent bystander who was not involved in anything that

15  occurred is simply -- it's a gross manipulation of the facts.

16  The three individuals who assaulted him were at his house, at

17  his apartment for the prior 24 hours smoking marijuana and

18  drinking with him.  They were going to parties together that

19  night.  I'm not here -- no one is here to say that John -- that

20  Mr. Garang, committed the assault because we've learned that he

21  did not; but there was absolutely sufficient evidence for the

22  officers on that evening to make the arrest.

23         And the case that Mr. Garver is talking about with

24  respect to the continued detention is the Hill case, and the

25  Hill case is completely different, Judge, because in that case

1  the police officers determined, when they still had the person

2  in their custody, before he was put in jail, that they had the

3  wrong person, and they still continued to hold him.  And that's

4  not the case here.  We had an arrest, and then Story County took

5  over.  Once Story County has the witness, our hands are

6  literally tied, other than to continue to provide them

7  information, which we did, which ultimately led to the

8  information being found that was exculpatory to Mr. Garang.  So

9  the police -- the Ames city police shouldn't be vilified for

10  their investigation.  They're the people that found the

11  information that allowed him to be released.

12          THE COURT:  Thank you.

13          That is well presented on behalf of the plaintiff and

14  the defendants.  I'll get out a ruling.

15          Have a good day.

16          And if you want a transcript of the oral arguments,

17  you may order it from our court reporter, Terri Martin.

18          Thank you.  Good-bye.

19          MR. GARVER:  Thanks, Judge.

20          MR. RICHARDS:  You have a good day, too, sir.

21          (Proceedings concluded at 11:03 a.m.)

22

23

24

25

1              C E R T I F I C A T E

2              I, Terri L. Martin, a Certified Shorthand Reporter of

3    the State of Iowa and Certified Realtime Reporter, in and for

4    the Southern District of Iowa, do hereby certify, pursuant to

5    Title 28, United States Code, Section 753, that the foregoing is

6    a true and correct transcript of the stenographically reported

7    proceedings held in the above-entitled matter at the time and

8    place indicated and that the transcript page format is in

9    conformance with the regulations of the Judicial Conference of

10   the United States.

11             Dated at Des Moines, Iowa, this 9th day of January,

12   2020.

13

14

15

16                              /s/ Terri L. Martin_____
                                Terri L. Martin, CSR, RPR, CRR
17                              Federal Official Court Reporter

18

19

20

21

22

23

24

25